is Sanders versus Ryder. Five minutes, please. It pleases court. Good morning. My name is Michael Kars, and I represent the petitioner, Daniel Sanders, in this habeas corpus appeal. It's an honor to represent Mr. Sanders. It's an honor to represent a person who has averred his innocence, pro se, through many both state and federal proceedings. And I think that this court has raised some issues that it's asked for briefing on, that we have briefed on, and I want to get to them. I think what's important for this court to consider is the threshold issues on the waiver of the right to appeal. The question is, what actually transpired? What were the issues that led to the waiver of appeal? That's one of the critical issues that I think has not been fully addressed by the state court or the district court. In particular, I draw this Court's attention to the issue that Mr. Sanders raised, pro se, regarding how he termed it prosecutorial vindictiveness, and there's a few other terms of art that he used, which we may not have chosen. But I think the argument that he was trying to make and that is appropriate for this Court to consider is whether or not his waiver of the right to appeal is voluntary. Now, I also have argued in briefing, and he's argued that the knowing issue on his waiver of the right to appeal was not appropriate and was not at the proper weight. But I think the voluntariness has not been addressed. And I think that the issue that goes into the critical elements here is the relationship between him and the prosecutor in question, the timing at which the offer of the waiver of appeal came about, and the underlying criminal charges that the prosecutor claimed that they were she was going to bring against him when they happened. And I think that that's critically factually, because if I drive this Court's attention to the fact that the alleged witness tampering occurred in a pretrial hearing, not during the trial, and also the issue of the perjury, the question of what he said on the stand while during the trial, that if looking at the facts, it's really, you know, he actually – it could have been taken many ways, but whether or not there was actually a perjury charge there, I vehemently disagree with. I have a question for you. This is a little outside of my experience, and though I don't have that many years of it, but it's the first case I've seen where there's a plea bargain before sentence, sort of like if you give up your right to appeal, we'll make such and such a recommendation. Is there any – is there a general – is there any case squarely in point on whether that's permissible, apart from the details of this case? Any case upholding such a plea bargain, which is – you know, it seems to raise a whole bunch of issues. Yeah, there is, although I think that the briefing actually went to the point of agreeing that there was the right to waive – I think there's a Washington State court, State v. Sweet, I think that was cited in the briefing, if I remember correctly, on the fact that the Washington State courts have certainly given the right to waive the right to appeal, which brings us to an interesting issue. And as I would say, it is okay. You go through a trial, you've averred your innocence, and I think the briefing talked about this, and you get found guilty. And there's arguably, as we've argued here, that they're leading to this finding of guilt was ineffective assistance of counsel, which is then – gets into another complex issue. But the thing that I'm troubled by, but I don't really know the answer to, quite honestly, is what level of knowledge, for example, what level of voluntariness comes into an issue of a waiver of a right to appeal? Looking at a plea bargain before trial, you know, the individual has supposedly all information before him or her to make an informed decision and has a period of time and can look at it with at least some, hopefully, dispassion with assistance of counsel. This is much less structured. I mean, it's like give up your right to appeal or we're going to throw the book at you. Right. And my question, though, which I don't know if you were answered directly, is this. I know that there are cases saying a person can give up their right, can waive their right to appeal, but are there any cases saying that they can waive their right to appeal in exchange for a bargain that the prosecutor will recommend a low sentence range or the prosecutor will not make other charges against them? I believe there must be, but I can't answer that question at this moment, Your Honor. Okay. I've got the following puzzle, and I don't think this is your fault. It's just that the law has got all these tangles to it or cross-cutting things. One of the things your client wants to allege or assert is ineffective assistance of counsel.  How far does that waiver go? Assuming that he is saying, well, I had ineffective assistance of counsel, which put me in the position where I waived this, and the ineffective assistance of counsel is inextricably linked to this asserted waiver. What happens if he asserts ineffective assistance of counsel in the state court of appeal and, indeed, in his petition to the Washington Supreme Court? Does the waiver stick? Is that enough to get around it? I mean, how do I interrelate the ineffective assistance of counsel and this purported waiver? That's an excellent question, because, I mean, that was one of the basic issues that I had to tussle with, because it – I mean, this is kind of where I opened and I'm trying to lead into the problems that this case gives both procedurally and in terms of the law. Because, for example, I could argue that if I have – if I'm in trial and I have ineffective assistance of counsel, then somebody says, look, and I'm found guilty, and then somebody says, look, you, you know, you either have this choice, you waive your right to appeal, and I'm there because of the ineffective assistance of counsel, then does that give the basis in fact to argue that? Or does that – There are two different stages at which you can have ineffective assistance of counsel. The question is, was the main question that's briefed and argued is whether counsel was ineffective at the trial in not calling witnesses and not putting on a case. That doesn't have anything to do, really, with whether counsel was ineffective at the time of the plea agreement. You're arguing now, I think, that he was ineffective in allowing – not the plea agreement, the sentencing agreement. You're arguing, or are you, that the counsel was ineffective in allowing him to enter into an agreement that he would waive his right to appeal? If I may clarify the record, as I understand it, first off, it's absolutely clear that Mr. Sanders, at least, you know, through various points, argued his trial counsel was ineffective, and that goes to his claim of innocence. And then it raises the issue of cause and prejudice and if the ineffective assistance at a trial level can lead to prejudice. But as for his appellate counsel, he did also argue, at least he attempted to argue, I would say, that his appellate counsel – or not to strike that, because he had new counsel for his post-trial. His post-trial counsel was ineffective. And I think this also then also dovetails in, as it often does, with the issue of whether or not it was a knowing waiver, because then one of the issues is – But your first argument, then, that you have to reach is that the post-trial counsel was ineffective in waiving the ineffectiveness at the trial. I respectfully do not reach that same conclusion, Your Honor. And the reason is, is that I do not believe that you have to make an ineffective assistance claim if you're arguing that the voluntariness element of a waiver has been violated by the circumstances of the trial level. At least that's one argument. How do the circumstances of the trial make your agreement? To waive your appeal at your sentencing. How are they vitiated by what happened at the trial? Because – Suppose the prosecutor comes and says, look, I'm going to give you probation for first-degree murder. And you say, well, I had a lot of errors in first-degree murder. But that's a good deal. And you've got a great counsel who gets you the best deal in the world, and they say, but you won't appeal. That can still be set aside because of the errors made at trial? Well, it would go to what the colloquy was at the waiver and sentencing area.  That's what I'm saying, isn't it? Aren't you – don't you have to start by saying there was something wrong? You have two choices, it seems to me. You either have to say there's something wrong with that agreement reached at sentencing. It was based on ineffective counsel, and it should be set aside. Or you have to say that he can't waive ineffective assistance of counsel at trial for some reason. But that's a different argument. Sure. But you – How about the following argument, that is to say, let's assume, although it's a contested point, let's assume that his sentencing counsel, I'll say it that way, was effective. But let's assume that his trial counsel, and there's some evidence to support this conclusion, was ineffective. The ineffectiveness of the trial counsel puts him – puts the defendant in a very difficult, even impossible situation from which even competent counsel cannot satisfactorily extract him. Therefore, when he makes a deal given the circumstance that he's already been convicted, that allows the waiver. Well, why is that not directly as a consequence from the ineffectiveness of the trial counsel? And whether his sentencing counsel was competent or not, he couldn't save him from that consequence. Well, that's a way to get to the second point, which was to say that you can't really waive the ineffectiveness at the trial level on this kind of a plea, on this kind of a deal. And Judge Fletcher is giving one way to get there. You may have others also. Well, that's the difficulty with the case in a sense of trying to argue it, is because there's various ways to get there. And one of the ways to get there is, which I said hadn't been addressed at the various court levels, was the issue of the relationship with the defendant with the prosecutor and exactly how this particular sequence of events came about that he ended up taking the waiver. And, I mean, to have a prosecutor tell this individual that based upon asking for a waiver, etc., they're going to end various things, will be the end for the rest of their life, I mean, I would argue that that exceeds the scope both of the reality of the sentencing under Washington laws and it exceeds the prosecutor's charge under the prosecutor's, you know, duty to do justice under, you know, ethical issues. They shouldn't they're just overreaching. And that removes the voluntary. Another question. To what extent do the habeas standards require, if at all, that this be clearly established under Supreme Court law? As far as the voluntariness issue or the overreaching? As far as what occurred here, if we were to say you can't have this kind of an arrangement, that you can't give up an ineffective assistance claim in this kind of a sentencing proceeding, or that the facts here are such that he was forced into an agreement that is not a valid agreement, to what extent are the habeas rules effective? I think it's clear that the cause and prejudice standard can apply if you're arguing that the cause of my client's waiver was the ineffective assistance of counsel at the trial level and for which he suffered prejudice. I think that as regards to the other issue, I mean, the voluntariness. How about just the issue of whether, let's put aside personalizing it to this prosecutor in this case. Sure. I realize a lot of your brief argues that way.  And whether due process precludes a bargain at sentencing that requires a defendant to give up an appeal in exchange for a low recommendation or in exchange for the dropping of potential ancillary charges that haven't yet been made, right? He hasn't been charged with perjury or whatever. That's correct. So if that were the issue, is it precluded by the Supreme Court's precedent that says you can't give someone a stricter sentence without particularized reasons in punishment for having had an appeal the second time if they're convicted after remand? Does that mean if you can't punish someone for taking an appeal, then you can't threaten to punish them if they don't waive their appeal? It seems to me that's kind of the gist of this plea bargain or sentencing bargain was, we're going to hammer you to the maximum extent possible if you don't waive your appeal right. And I just wonder if, and not criticizing the prosecutor, maybe the prosecutor does it reasonably, and they're just saying, we're going to urge the maximum consequences for you for everything you've done that's wrong if you don't waive your appeal. No impropriety on behalf of the prosecutor of overreaching it, but just the concept, does that satisfy due process? And if it doesn't, can we say it doesn't under clearly established law, clearly established by the Supreme Court, which I think is the Adeepa standard in this case? It would be, now, understand that I've also argued the Adeepa standard does not apply to issues that have not been addressed in the lower court levels, including the State court. And the prosecutorial issue of, you know, and I don't personalize your side or whatever as far as this individual, but this has not been argued. We've never ruled as a court that the Adeepa standard doesn't apply to some issue that wasn't argued. Well, I thought that there was a case. But anyway, I, my issue on here, I mean, we're talking about a North Carolina v. Pierce type argument. And I think that it is clearly established under Supreme Court law that there are certain circumstances where there is, shall we just characterize, maybe a little overreaching. And that under that kind of standard where one is threatened by a, you know, an exceptional sentence in exchange for waiver, I think that the North Carolina and with Blackridge, I think there are cited a few cases would clarify. Now, I'm not sure if I have four minutes until the 20 minutes are up or. Okay. So we won't. Okay. What do you want for rebuttal? Excuse me. I asked for four minutes, Your Honor. Well, we'll give you four minutes for rebuttal and we'll throw the questions. Okay. How does this differ from the normal case in which defendants give up their right to appeal? For one, I mean, generally speaking, one gives up a right to appeal in the state of Washington if one is, let's say, pleads guilty and is sentenced within a standard sentencing range. The difference is, is that you cannot appeal the actual type of sentence you receive within a standard sentencing range under determinate sentencing. But if you do go to trial, you get an automatic right to appeal in the state of Washington. I see it as very different in that we are looking at someone who said, I'm innocent, I'm going to trial. They get convicted. However, they get there is one of the arguments that we've made. But when, take an ordinary Federal case where you have a waiver of the right to appeal in connection with the sentencing, isn't that the same kind of hammering that Judge Gould talked about? We say, if you want this kind of a sentence, you give up your right to appeal. And we say, oh, that's fine, don't we? It's normal. Isn't that the normal rule that they could prosecute it and say to you, if you want this kind of sentence, give up your right to appeal? I understand. But I would argue that the ---- I don't happen to think that's right. But that's the rule, isn't it? But then you're giving it up in connection with a plea of guilty, correct? Generally, yes. There's a guilty plea. Here, there was never a guilty plea. That is correct. And that's what I think ---- Where does that lead you as a matter of constitutional principle or any kind of principle? How do you distinguish it is what I'm asking, other than by saying the facts are different. Yes. What principle that offends you is ---- I think that Your Honor's point is well taken. And I have to say that the North Carolina v. Pierce chain of arguments where, for example, if you, you know, win your right to appeal and then you come back and they give you a higher sentence without justifying it factually, then that is considered a violation of due process. And I hear you have a situation where you're threatened with a higher sentence unless you give up your right to appeal. I would say that the North Carolina v. Pierce arguments that my client has averred through the whole period of his pro se litigation by name is appropriate to this situation. I think it's a pretty good argument. It's a little ---- it's, you know, if it were on direct appeal, then I would think it would be much stronger because it's a little bit by analogy. But given the difference with North Carolina v. Pierce and the ADIPA standard, does that foreclose us is the question in my mind. In other words, can we say that the principle is clearly established under Supreme Court precedent when we're applying the principle in a slightly different context? I think if it was a situation where North Carolina v. Pierce was only used in like a couple of situations, a couple of Supreme Court cases, maybe one, maybe two per se, that would be arguable. But because North Carolina v. Pierce is replete through case law as the standard under which these various scenarios are judged and its expansion by the Supreme Court and the Court of Appeals, including this Court, would argue that North Carolina can't be so expanded. I notice that now where I'm in the red. Okay. Well, we'll give you some more time after the government's argument. May it please the Court. My name is Greg Rosen. I'm an assistant attorney general, and I represent the Respondent, Leslie Ryder, in this matter. The State court's enforcement of Mr. Sanders' waiver of right to appeal was not unreasonable. As the United States Supreme Court has held in the case of Jones v. Barnes, there is no constitutional right to appeal. This Court reiterated that holding in United States v. Anglin. But there's no constitutional right to appeal. But if a state grants a right to appeal, there's a different issue, which is can the state require the accused to give up the right that they have granted in consideration of not being punished in some way? And I'm sort of characterizing it against the state's position, but I'm very much troubled by this case. If it were on direct appeal, I would apply North Carolina v. Pierce. And I could be wrong, but I would think it would be a fair analogy here. I'm not sure under a D, but let me ask this. Is this a general practice? I mean, is this like an odd case that has just occurred for whatever reason that it came up this way? Or is this a routine practice, if you know, of prosecutors in this state asking defendants after they've gone to trial and not pleaded guilty to give up their right of appeal? I cannot speak to the specific practice in Clark County, Washington, where this case came out of, Your Honor. I used to be a deputy prosecuting attorney. I will tell you that it is not a regular practice. I have seen it done, but I cannot say that it's done in every case or even on a regular fashion. I think, you know, here, I'm trying to remember if this originally went to a screening panel, but I think this is somewhat unusual, the circumstance, that we're not, at least I'm not familiar with it. I don't know if the other judges have seen it. And I'm really troubled by it as a general practice. I'm not buying the argument that the particular prosecutor here was vindictive or, you know, anything like that. I just wonder if this is a practice that's precluded by due process. I don't believe it's a practice precluded by due process. But what I think is important to remember, Your Honor, is to look at the entire scenario here. There's been several questions from the bench. Mr. Carr just made certain comments regarding Mr. Sanders being threatened. This was an agreement. There was another party to this agreement, the State. What was the State giving up? There's been much talk about being threatened. I would respectfully submit there was no threat. The hard reality, life is full of tough choices, but the hard reality for Mr. Sanders at that time was whether to guarantee there would be no new charges brought, to guarantee that the State's recommendation would be the low end, 108 months. It just seems sort of bizarre, though. I mean, normally when there's a charge made against a defendant, we have this intricate process under Rule 11 to make sure the defendant knows what's the worst case, what they're charged with, what they can go to jail, what their maximum time is. And here, like these other charges, like we'll throw the book at you, we might charge you with coercing a witness or whatever or perjury, there's no delineation of the elements of those charges that he's making a deal, giving up something to be freed of them. There's no delineation of their elements or the maximum penalties for him. It's just sort of in this vague, vague, nebulous dimension of the prosecutor basically saying we're going to throw the book at you if you don't give up your right to appeal. Your Honor, I would respectfully disagree with the Court as far as it being vague. If the Court will look at SCR 368 and 369, I believe that is a letter from Mary Gaffney, who was Mr. Sanders' attorney at the time that the waiver of right to appeal was conducted. That letter indicates, as I recall from Ms. Gaffney to Mr. Sanders, laying out specifically what the prosecutor's new charges might be. As I recall, Ms. Gaffney included a certain addendum to her letter, which I did not have a copy of, but I believe she refers to them in her letter as to the elements of those particular possible charges. Well, there's no process before the Court about those charges and that the charges weren't made. Those charges have not yet been filed on information. That's correct. Could they have been filed by information or would they have to go to a grand jury? I believe those charges... Because the prosecutor could have just filed them. I'm not sure what the specific practice was in Clark County. I will tell you from previous experience of my own, in Thurston County you had to establish probable cause to a Thurston County Superior Court judge before information could be filed. The prosecutor couldn't just in an unsolicited unilateral fashion sit in their office and say, well, I think perjury is going to work here, or what have you. That doesn't work that way in Thurston County. I'm sure it doesn't work that way in Clark County. It just seems like it's bothering me a lot as an awful lot of unstructured power for a prosecutor that's unreviewed by the Court. One of the things that bothers me about this, and I'm not sure it's the case here, but it bothers me if there is available a practice that after the trial has taken place and after a guilty verdict has been rendered and the only issue remaining in the trial court is the sentence, if the prosecutor at that point can make it pursue this without sort of accepting the deal, the prosecutor can protect an awful lot of terrible things that went on at trial. But this is different from I'm going to plead before trial. There are a lot of things we don't know. Here we're pleading after trial. So both sides, if they're well advised, they know their vulnerabilities. And if the prosecutor knows, you know, there are about ten things that went wrong in this trial and I don't want an appeal. I'm going to stay away from the word threat. I just reread The Godfather. I'll say I will reason with this defendant. And I'll make him an offer he can't refuse. And the offer will be I will give you, you know, I'll agree we'll get a sentence of 120 months here, and in return I won't do the following things, which I have a legal right to do. But the prosecutor is doing it because he knows that trial is full of holes, but the defendant, given the nature of the bargain offered, he says, okay, I'll take it. I don't know that that happened here. But this strikes me as if this is a normal practice or permissible practice, that danger exists. I'm understanding fully the uncomfortability, if that's such a word, from the bench about or the discomfort of this bench with this process. And again, Judge Gould, I don't believe it's a general practice. I have seen it happen. But I have to emphasize to this Court, there was a choice by Mr. Sanders. He could have told the prosecutor, no matter how attractive that offer was, we'll recommend an exceptional sentence down of 36 months, because the prosecutor thinks to herself hypothetically, and I am making this a hypothetical position. Gosh, when I questioned that witness, a lot of inadmissible stuff came in. Well, when I put that into evidence, that wasn't done correctly. There wasn't sufficient foundation. I better protect my case and make sure this thing doesn't go up any further. Let's just put it to bed. Mr. Sanders could have told the prosecutor, I don't want it. I want to maintain my right to appeal. But what comes clear through in that colloquy, and it is a, I would grant you, a tortured colloquy, what comes through is Mr. Sanders wanted the best of both worlds. He wanted everything on his behalf. The other example, which is, you know, you say to the prosecutor, he says to the defendant, the prosecutor, knowing he's got real problems on appeal, says to the defendant, you know, this is a capital case. I'll give you life if you don't appeal. Now, defendant, if he wants to appeal, no matter how good his appeal is, he's risking his life, may be executed if he draws a bad panel or he's in a bad state. It's a, you say they're a life full of hard choices, and so is the legal system. But that would not be, that's sort of the extreme of what Fletcher is suggesting to you. That's an offer you really can't refuse. Who can gamble his life on winning an appeal in front of an appellate court? Should that be the kind of choice you have to make if you really shouldn't have been convicted? But it remains a choice, Your Honor. It remains a choice. Mr. Sanders could have told the prosecutor. This was being done. Well, as you say, this explains the discomfort, whether it should be permitted. You know, the prosecutor's got a lot of power to start with, and you can go to him and say, look, I'm going to try you on, try you, try your wife, try, you know, a lot of people on these charges where you'll end up with a life sentence, or you can plead to something where you've got a maximum of five years and you get the same kind of risks there. This one, as Judge Gould suggested, is sort of a little different from one we've ever heard of before. Sure. Sure. This may be one where somebody should say this isn't the kind of thing that should happen, but whether we can do it on habeas or not, I don't know. Well, I've got a different question, and this may allow us to get around some of these difficulties without going at it directly, and that is, obviously, what Mr. Sanders really wants to do is to be allowed to present an ineffective assistance of counsel argument because he's now saying I've got all this stuff that should have been presented at trial, and if it had been presented at trial, I probably or maybe even never would have been convicted. Now, they haven't tested it. I don't know whether it's true. I don't know whether he has it or not, but he says he has that. Right. And if he truly has it, his lawyer at trial was lousy. I would say, just kind of a guess, there's a pretty good chance of showing an effective assistance of counsel if he's able to get there. Now, why can't he present an ineffective assistance of counsel argument, which is, of course, different from the sort of the threat argument or whatever we characterize. Why can't he present an ineffective assistance of counsel argument? At what juncture? Now to a Federal court on habeas. Well, several reasons. One, this Court's certificate of appealability, or rather the certificate of appealability that was issued by the district court doesn't have ineffective assistance as one of its claims. That's not one of the issues before this Court that was granted on the certificate of appealability. He waived his appeal. So unless that waiver is invalid, how could he assert it? Well, Your Honor, this Court has no subject matter jurisdiction. The issue being raised now was not in the certificate of appealability. Moreover, the issue is totally unexhausted. Well, I think we can expand it. There's not a lack of subject matter jurisdiction because we can expand a certificate of appealability. But there was no request from Mr. Kars to do so, as I recall, from the docket. There was no request to broaden the certificate. That's not subject matter jurisdiction. That's a question of our rules as to when it should be presented and how it's to be presented. And I don't think that's subject matter. There's a question of whether it might violate one of our rules about how you request expansion. But no request was ever made, Your Honor. No request was ever made from Mr. Sandler. Well, I said didn't he brief ineffective assistance? Yes. But he never motioned the Court formally to broaden the certificate of appealability. That can constitute a request. I don't think that's a semantic point. Well, and you argued against it. I mean, you and your brief responded to ineffective assistance of counsel. Right. Well, let's see. I understand it's a real point. And I don't want to just blow by it and say I'm going to ignore it. But I'm going to ignore it for now. Okay. Assume that we get past it. All right. Then what? The claim is completely unexhausted. If you look at Mr. Sanders' petition for review, he lists three claims. And if memory serves, it's at SCR 338. It's where those three claims are listed in his petition for review. This is in the Washington State Supreme Court? That's correct. None of those claims, none of them, have anything to do with ineffective assistance of counsel. The U.S. Supreme Court had to do with that. I'm reading from that petition, page 346, SCR 346. All right. Mr. Sanders was denied the effective assistance of counsel. He was also denied his constitutional rights to be at trial, to have witnesses. After trial, he presented pro se motions, malicious prosecution, ineffective assistance of counsel. There it is. Right there in the petition. The rule of appellate procedure 13.7b in Washington Court requires that the States Supreme Court will not consider issues in a petition for review unless they're listed. Those issues were never listed. They were thrown in the body of the petitioner for review. He's doing this pro se. In Washington's report, he was pro se, yes. Right. Yes. And as the U.S. Supreme Court has stated clearly in O'Sullivan v. Burkle, a petitioner to properly exhaust their habeas claims must present their claims to the State's highest court. He didn't list those claims in the State's highest court. Those claims are unexhausted. He didn't list them on the table of contents or up front, so he just talks about them in a pro se petition very clearly. I mean, these are the right words. That's not enough. Well, according to the U.S. District Court judge, no. The judge also found that those claims were unexhausted. I'm not talking to him anymore. He's in front of us. I know you are. I'm simply going there for additional support for my position. Okay. But it's clear that it's in the body of the petition to the Washington State Supreme  Those claims are listed in the body. That's correct. And it's a question of fact, which is not, as I understand it, in compliance with rule of appellate procedure 13.7b, which requires them to be listed. And is that rule consistently applied in the Washington State Supreme Court? In my view, it is, yes. Mr. Carson may have a different view, but. I mean, it's a question of fact. Is it or is it not? Well, that's asking me to speak to the entire universe of cases before the Supreme Court, and I can't knowledgeably do that. Of course, it's a relevant question, obviously. If it's a procedural bar that's consistently applied, then it's consistently applied. But if it's not consistently applied, it's not enforceable. Well, I believe it is. I believe it is consistently applied. Okay. And, again, I don't want to blow this by as if it weren't an issue. I understand it's an issue, and I take very seriously what you said. Assuming we can get past the COA.  And assuming it is properly presented in the sense of the petition such that for a pro reason the Supreme Court saw it, then what? Is there something else that prevents us from getting to ineffective assistance of counsel on habeas? Well, nothing that comes to mind right now, Your Honor. However, I think those two points I've raised are not insignificant. Those are serious points. I understand that. I'm not quite sure I follow this. I mean, other than the waiver of the right to appeal? Well, that's kind of what I'm wondering, whether or not the waiver of the right to appeal is another reason why he can't do it on habeas. Of course, this is not appeal. This is habeas. Well, that's the question, yes. Did he waive the right to appeal ineffective assistance? And if he did waive the right to appeal ineffective assistance, did he waive the right to habeas? He didn't waive his right to exhaust his claims. What he waived, and I'll refer the Court to S.E.R. 415, 416, where the written stipulation of the waiver of appeal lies, he gave up his right to direct appeal. Yes. There's nothing in that document which speaks to the waiver of a collateral attack. Nothing stopped Mr. Sanders from filing a personal restraint petition in which he could have raised and properly exhausted the claim of ineffective assistance of counsel. What stopped him from doing it there? None, I would submit. That stipulation doesn't mean I waive exhaustion. I put myself in an irretrievable, irreversible hole in terms of habeas. What it says is, if you look at the stipulation, it says I gave up my right to appeal. I gave up my right to appeal my judgment and sentence. Wouldn't a personal restraint petition, if he filed a collateral attack, wouldn't it have been dismissed if they upheld that appeal waiver? Are you saying the appeal waiver would only cover direct appeal and not a state habeas? I'm saying that the waiver of appeal that he signed covers only direct appeal of his judgment and sentence. It says nothing about prohibiting him from filing a collateral attack. Does it by its term say it only applies to direct appeal and not to collateral attack, or does it just say I give up my right to appeal? No, it says I gave up my right to appeal of my judgment and sentence, I believe is what it states. I'm sure it's in the record. 415, 416. In SCR, 415, 416. Yes. Okay, thanks. Do you have it right in front of you where you can read it to us? Actually, I think I could, Your Honor. Isn't a collateral attack just another form of, it's like a, it's not the direct appeal, but it's still, isn't it still an appeal? No, Your Honor. I would respectfully submit that a collateral attack is a collateral attack. And I don't mean to be cute, but a collateral attack is an entirely new cause of action. The appeal, in a sense, is a continuation. But if that's true, then you're saying he could apply for habeas relief if he exhausted. Yes. That's your position. Yes. Nothing stopped him from filing a PRP. He didn't do it. So the prosecutor's deal here is kind of an illusory, like an illusory deal. It would preclude him from direct appeal, but wouldn't stop him from a state collateral proceeding or a federal habeas claim. I think that would be factually correct. But that doesn't seem like that could be what the prosecutor had in mind to me. It may not have been. And maybe I'm reading this with 20-20 hindsight in my office as a habeas attorney, and I'm not the DPA who's sitting there. I understand. I would prefer that we don't get to the some or that we don't reach this habeas, this due process issue about whether this could ever be done. It would mean that the issues that have to be appealed are waived, but issues that can be presented directly for the first time in habeas are preserved. What I'm saying is that Mr. Sanders could have properly – could have fully and fairly presented his claim of ineffective assistance of counsel either. No, I'm just trying to find out what this agreement means. It means that any issue that's subject to appeal is barred. I have the stipulation and waiver of appeal right here, Your Honor. No, Judge Fletcher gave me a copy. Oh, okay. It says here you waive the right to appeal the judgment in a sentence, unequivocal waiver. Right, and that's what I stated earlier. And that you read as meaning anything that's subject to appeal or has to be appealed is gone, but anything that can be presented directly in habeas is preserved. That's – actually, I didn't understand it that way. I understood you to be saying that even if it could have been raised on direct appeal, it wouldn't be waived if you brought it in a PRP. That's what I – that's my position. Well, let's assume you can bring it in a separate collateral proceeding without appeal. If it had to be – anything that had to be appealed is barred, and therefore anything that requires you to appeal, you lose. But anything that can be brought directly in a habeas or in collateral is preserved. Well, I would respectfully submit that this Court's holdings in Roberts v. Arav and Nolte v. Peterson speak to the issue. This Court in Roberts at 847 F. Second at 530 stated, and I'm quoting, the apparent futility of presenting claims to State courts does not constitute cause for procedural default, citing Engle v. Isaac, which, as the Court knows, is a United States Supreme Court case. And as the United States Supreme Court stated in Isaac – and again, I'm quoting in Engle v. Isaac, rather – if a defendant perceives a constitutional claim and believes it may find favor in the Federal courts, he may not bypass the State courts simply because he thinks they will be unsympathetic to the claim. Even a State court that has previously rejected a constitutional argument may decide upon reflection that the contention is valid. Now, let me ask you this. As I read the Washington State case law on what may be presented on direct appeal with respect to ineffective assistance of counsel, the sort of ineffective assistance of counsel claim he would have liked to present here, the failure to call certain witnesses and so on, actually, that sort of claim has been entertained on direct appeal by the Washington State Supreme Court. Am I right on that? That is to say, going a little bit outside the record. Not very much, but a little bit. My understanding is the Washington State Supreme Court has been willing to do that on direct appeal. You don't have to go with a personal restraint petition to expand the record just a little bit for an IAC. I think that's accurate. So, in fact, this was cognizable on direct appeal if the waiver of appeal were not in there. Correct. So he could have done it absent his waiver of appeal. And what happens if the waiver of appeal is itself the product of ineffective assistance of counsel? Well, I would argue to the merits that counsel was not ineffective here in terms of advising Mr. Sanders. In fact, during the colloquy, the colloquy makes clear that she had advised him that the counsel had spoken for weeks, apparently. Well, you see, it's possible that you heard my response to the others when your adversary was up, that it may be that the second lawyer is effective. I'm not saying yes or no, but it may be that the second lawyer is effective, but the first lawyer was so disastrous that the second lawyer is in such a position that what can I do? Well, that's possible, Your Honor. One thing I don't agree with the Court's contention, but I understand where you're going. At a certain point, I would submit, a person has to live with the consequence of their choices. And, again, this Court has, with all due respect, is viewing this issue in a very perhaps unbalanced fashion, that Mr. Sanders has had placed upon him this enormous burden that, based on due process, he should not have. And I would respectfully submit that Mr. Sanders could have told the prosecutor to go fly a kite. I'm going to keep my right to appeal. But he said during that colloquy, I don't want any more charges. He wanted everything his way. You certainly got that on your side. Let me ask you another question, though. And I will say you could tell the Attorney General that Judge Gould said you should get the rest of the week off because this is like arguing three cases, because we're all interested in different things, given the unusual nature of this. But here's my question. Is there any case that holds that due process is not offended by a post-trial waiver at sentencing, a right to appeal by a defendant who has maintained his or her innocence in consideration of a low sentencing recommendation or a prosecutor's statement that they won't bring other charges? Is there any case that sustains that? I'll call it that type of arrangement or procedure. Not a case that says you can waive your right to appeal generally, but a case that says that particular scenario or procedure that's alleged here does not offend due process. I'm trying to recall the facts of the case called U.S. v. Navarro-Battello, which is this Court's holding at 912 F. Second 318, a 1990 decision. It cited Town of Newton v. Roomery, which is a U.S. Supreme Court case. It also cited Abney v. U.S., which is also a Supreme Court case. I don't know if the facts of Navarro-Battello state specifically regarding or address specifically the issue of a low-end recommendation. What it does state, and I'm quoting, accordingly, if it is not a due process violation for a defendant to waive constitutional rights as part of a plea bargain, then a defendant's waiver of a nonconstitutional right, such as the statutory right to appeal a sentence, is also waivable. And, again, that site is 912 F. Second at 318. I don't know. What is it, 912 F. Second 318? 912 F. Second at 318, Your Honor, 1990 decision. But you're saying it's not at this step in the procedure. That's not a – you could waive your right to appeal. You could waive your statutory or constitutional state right to appeal when you make a plea bargain. But that case is – is that case one that does not involve a post-trial waiver? I don't recall. I don't recall. Well, could – would the Attorney General send out a memo to all state prosecutors to say don't do this if we don't make a ruling on it? Well, I guess I would merely reiterate, Your Honor, that, again, under Jones v. Barnes, the U.S. Supreme Court case, there's no constitutional right to appeal. This Court's reiterated that inside of Jones in U.S. v. Englund. It stands to reason, if there's no constitutional right to appeal, it stands to reason that there's no Federal constitutional violation to give up that right to appeal. It's – the waiver of a state-created right is not a Federal constitutional claim. It's not even cognizable under ADIPA. In conclusion, I see my time is well up. I would ask this Court to affirm the decision of the U.S. District Court in all respects and to dismiss Mr. Sanders' habeas petition with prejudice. Your Honor, when Judge Gould says that there are three different issues people are interested in, there are even more that we haven't even reached. Yes. Such as slop, for instance, which is a serious issue in this case that we haven't even asked a question about. So don't feel that it's only those three issues you're interested in. I understand. If I had more time, I would stay up here. Very nice job. A difficult case. Thank you. We could give Mr. Carrs the rest of the week off, too. I wish I could, Your Honor. Just really try to keep it quick. I know in the briefing that we did cite that Perry cited to Worcester v. Commissioner, which had to deal with the situation exactly where someone is giving up a certain rights for the threats of further punishment. I do note that I believe there was a further issue in that case about the judge taking an active part of the colloquy, but I would remind the Court that the judge was at least somewhat involved in this colloquy, even though not intentionally, in terms of, you know, what would happen. I think that the real issue is, I mean, at some point in time, is there a situation where there may be considered overreaching? Just do the procedural posture of the case. And I think that's what the Court is raising. Because at this point in the case, the due process concerns, given the fact that someone, you know, we talk about waiver. We always talk about knowing, intelligent, and voluntary in terms of plea agreements. Well, in that situation, you haven't been to trial. At least you have an idea of what's out there that you can argue. But you haven't had adjudication on the merits. But in this situation, obviously, there has been adjudication, arguably, on the merits or not. Which brings us to the merits issue, which is the ineffective assistance of counsel. Now, procedurally speaking, basically, I was asked to brief certain issues, but there was room to expand as according to the orders I sought. And I thought because the issue of ineffective assistance of counsel at the trial level was so critical to where we are today that I did brief that issue and that I would ask the Court to consider it, if need be, on an oral motion because it was so critical. But I thought that because of the order, it was not required. Kennedy. Just to be clear, you want to you would like to move, if such a motion is necessary for an expansion of the COA to include the ineffective assistance of counsel? Absolutely, Your Honor. Okay. And if need be, I'd be more than happy. I did think I briefed some cases which discuss how you expand COAs and the Court's ability to expand on their own, too. Another question. If we were, I don't know if we would do this or not, but if we were to decide that this type of post-trial sentencing bargain offends due process under clearly established Supreme Court law, then what happens? I mean, are we then, and in other words, that he had a right, Mr. Sanders had a right to an appeal. Then are we supposed to consider his appeal? Are we supposed to send it back to the State and say, now let him have his appeal that he would have had absent this waiver? Well, I know that my client continues to appear as innocent. I think that he would accept anything that would give him a chance to state his innocence for the record with witnesses. I know that, you know, there are several options, and because the issue hadn't really been developed, although presented to the State court on terms of ineffective, et cetera, I mean, the district court can have an evidentiary hearing which would then go to cause of prejudice or actual innocence, the Schlupf standard. Or it can't. I think that my client, and I'd have to talk with him, would prefer that this case go to an evidentiary hearing to determine on the merits whether there was indeed a case and what the situations were involving the particular actors. In the district court? Yes, yes. But you would say we wouldn't just send it back, say there should be relief that he gets an appeal in the State court system? Well, I would say that if you overturned it on the basis of a Pierce violation, then certainly that, you know, in all honesty, there's various options this Court can employ. I would argue on the basis of Schlupf that then the district court could also consider an evidentiary hearing if the court reaches that issue. But either way, we'd like to do that. One last thing, just choice, is that I think that it's clear that there is issues of timing and whether or not there was real choice. Thank this Court. Thank you. Thank you, counsel. Thank you both very much for a very helpful argument. Thank you. The case to be argued will be submitted and the Court will stand in recess for a brief period. All rise. This Court stands in recess. Thank you.
judges: Reinhardt, W Fletcher, Gould